IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


UNITED STATES OF AMERICA,               )   No. 25 CR 608
                                        )
            vs.                         )
                                        )
RAY COLLINS and JOCELYNE ROBLEDO,       )   Chicago, Illinois
                                        )   September 29, 2025
            Defendants.                 )   12:15 p.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GABRIEL A. FUENTES, MAGISTRATE JUDGE

APPEARANCES:

For the Government:     MR. ANDREW S. BOUTROS
                        United States Attorney
                        BY:  MR. BRIAN R. HAVEY
                        219 South Dearborn Street, Room 500,
                        Chicago, Illinois  60604

For Defendant
Ray Collins:           LAW OFFICE OF RICHARD S. KLING
                        BY:  MR. RICHARD S. KLING
                        565 West Adams Street, 6th Floor,
                        Chicago, Illinois  60606

For Defendant
Jocelyne Robledo:      FEDERAL DEFENDER PROGRAM
                        BY:  MS. AKANE E. TSURUTA
                        55 East Monroe Street, Suite 2800,
                        Chicago, Illinois  60603




PATRICK J. MULLEN
Retired Official Court Reporter
United States District Court
219 South Dearborn Street
Chicago, Illinois  60604
(708) 935-1931

        *       *       *       *

TRANSCRIPT PRODUCED USING COMPUTER-AIDED TRANSCRIPTION

(Proceedings in open court.)

THE CLERK: 25 CR 608, USA versus Collins and Robledo for initial appearance.

The COURT: All right. Let's have counsel make their appearances for us, please. I don't know if we have both defendants or just one, but why don't you tell me what's going on.

MR. HAVEY: Good afternoon, Judge. Brian Havey on behalf of the United States. As far as I know, we do have both defendants, but one is in the back, defendant number 2, Robledo.

THE COURT: Oh, I'm sorry.

MR. HAVEY: But Mr. Collins is here.

THE COURT: Okay. So defendant Robledo is about to be brought out, is that right?

MR. HAVEY: I'll see if --

THE COURT: I'm willing to wait a minute or two.

MR. HAVEY: Can you bring her out?

THE MARSHAL: Is that what you'd like, Your Honor, both defendants?

THE COURT: Yes, I would, please.

THE MARSHAL: No problem.

(Pause.)

MR. KLING: And while they're bringing her out, Judge, Richard Kling for Mr. Collins, who is before the Court.

THE COURT: Okay. Thank you.

All right. So the record will reflect we now have present defendant Collins and defendant Robledo. So I think we have counsel for defendant Robledo. Could you tell me, please, and make your appearance?

MR. TSURUTA: Good morning. Akane Tsuruta with the Federal Defender Program for Ms. Robledo.

THE COURT: Okay. Very good.

So somebody is here from pretrial services. Please tell us who you are.

MS. LESCH: Good afternoon, Your Honor. Judith Lesch with pretrial services.

THE COURT: Okay. Thank you.

All right. So we're here for something called an initial appearance, and what that is --

MR. KLING: Judge, is it okay if we sit at counsel's table? I think you could see the clients better.

THE COURT: It's totally fine, and just talk into the microphone.

MR. KLING: Thank you.

THE COURT: So that way you get picked up on the recording.

Okay. So what we're doing today is something called an initial appearance, and what that is is the first appearance that you get before a federal court. It has to be held without

unnecessary delay after a federal arrest, and you get information that the Court provides to you. You're not really required to respond to any of it.

So, Mr. Havey, do you want to make a record for us of when each of the two defendants was taken into federal custody?

MR. HAVEY: Yes, Your Honor. The defendants were taken into custody Saturday night, and I want to say roughly 8:00 p.m. They were processed at the Broadview, Illinois ICE detention facility and then transported to the MCC later that evening, roughly midnight, and they've been in federal custody since that time, Your Honor.

THE COURT: Okay. So I really think given that it was very late on Saturday and yesterday was a Sunday, we don't normally have hearings. The building is not normally open on Sunday. This hearing is being held without unnecessary delay. We got you in on the first business day that the Court could, so I do think we're in compliance with the rule on that.

The next item is just maybe starting with Ms. Tsuruta for defendant Robledo. So I've been tendered a financial affidavit, and it appears to establish eligibility. Ms. Tsuruta, is defendant Robledo asking for you to be appointed to represent her in the case under the Criminal Justice Act?

MR. TSURUTA: Yes, Your Honor.

THE COURT: All right. So I will go ahead and sign

that appointment order.  One moment while I do that.

(Pause.)

THE COURT:  And turning to you, Mr. Kling, on behalf of Mr. Collins, has defendant Collins -- is he requesting that you be appointed under the Criminal Justice Act to be his counsel in this case?  I looked at that financial aid -- financial affidavit as well, and I think it establishes eligibility.  You tell me if you are asking for that appointment.

MR. KLING:  I am asking, Judge, and the federal defender had called me requesting that as a panel attorney I appear.

THE COURT:  Okay.  So I'm going to grant that, and I'm going to appoint you, Mr. Kling, as well on behalf of Mr. Collins.

So before we start the initial appearance, I need to know something from each defendant, and I'll just go one at a time.  Has the defendant, your client, each of you respectively, counsel, has your client had a reasonable opportunity to consult with you about the nature of today's proceedings?  Ms. Tsuruta, as to defendant Robledo?

MR. TSURUTA:  Yes.

THE COURT:  Mr. Kling, as to defendant Collins?

MR. KLING:  Yes, sir.

THE COURT:  So proceeding with an initial appearance,

what's the kind of information that you receive? Well, we begin with the charging instrument itself. Okay? It's a criminal complaint. Have you had a chance to look at it and go over it with your client, Ms. Tsuruta?

MR. TSURUTA: We have discussed it.

THE COURT: Mr. Kling?

MR. KLING: Yes, sir.

THE COURT: Okay. So roughly it alleges that on September 27th, which is this past Saturday, in a place called Broadview here in this judicial district, both of the defendants, Collins and Robledo, violated section 111(a)(1) of Title 18 of the U.S. Code in that they allegedly forcibly assaulted, resisted, opposed, impeded, and interfered with persons designated under the U.S. Code as officers and employees of the United States while those persons were engaged in the performance of their official duties, and the complaint also says that the acts involved physical contact with the victims of that assault. This is said in the affidavit to have occurred during a confrontation or an engagement outside the DHS facility in Broadview.

Is that a fair summary of the complaint, attorney Havey, and, if so, is this also charged in this particular case as a felony as to each defendant?

MR. HAVEY: Yes, Judge, that's a fair summary, and, yes, they're both charged with felonies.

THE COURT: Okay. So that's the nature of the charging instrument. That's what brings us here.

The next item is your right to counsel. So each of you has a right to go hire or retain your own counsel. But if you cannot do that, you can ask that the Court appoint counsel for you, and that's what's happened so far today. I'm already indicating that I'm appointing Ms. Tsuruta and Mr. Kling respectively as your counsel in the case. So that is your right to counsel.

The next item we want to talk about today is what are the circumstances under which each of you might secure pretrial release.

Mr. Havey, is there any Government motion to detain the defendants in this case?

MR. HAVEY: Yes, Judge, we are seeking detention as to each defendant.

THE COURT: Okay. So tell me. In order to do a detention, we would need to schedule a detention hearing, and what is your proffer as to the statutory grounds for a hearing to be held, Mr. Havey?

MR. HAVEY: Judge, it would be on the single ground of dangerousness, and we're not asking for a separate hearing date. I could just argue my position while we're here today, Your Honor.

THE COURT: Okay. In other words, you want to have a

detention hearing today.

MR. HAVEY: Correct.

THE COURT: All right. I need more from you from the statute about how 3142(f)(1) or (f)(2) authorizes the holding of a detention hearing. For many years counsel in this district didn't really pay attention to that provision, but in recent years I think we've been sensitized to it. So I don't think we can lawfully do a detention hearing unless it qualifies as one of those. Do you want to tell me which one you think it is?

MR. HAVEY: Sure. Your Honor, with regard to defendant Collins, you can hold a hearing, a court hearing pursuant to 3142, subsection (f)(1)(A), because it involves a crime of violence in that the assault by Mr. Collins resulted in a physical injury to one of the agents.

With regard to defendant number 2, her crime is not categorically a crime of violence because it involved a shoving as opposed to a physical injury and, therefore, she would not be entitled to a hearing, so to speak. It would just be by way of argument from the Government as opposed to a formal evidentiary hearing.

THE COURT: Okay.

MR. HAVEY: This is the way I read the statute, Your Honor.

THE COURT: Okay. I'm not sure I agree with you, but

let's take it one at a time.

Mr. Kling, on behalf of Mr. Collins, any response or reaction to the Government's proffer that a detention hearing must be held as to Mr. Collins?

MR. KLING: No, Judge. He is charged with a felony, and I believe under 3142 he probably needs to have a detention hearing.

THE COURT: Okay. So I've reviewed the law, and there's not as many cases as you might think. But under United States versus Witherspoon, 2006 Westlaw 3201921, Southern District of Indiana, March 6, 2006, a detention hearing under 3142(f)(1)(A) may be held based on the charge of 111, including the use of physical contact and force as a crime of violence under 3156(a)(4) which provides the definitional need under 3142(f)(1)(A) for a crime of violence. So I'll go ahead and make that finding, and it's without objection.

So, Mr. Havey, let's -- well, Ms. Tsuruta, let's talk about your client, Ms. Robledo. What are we doing there on the Government's proffer?

MR. TSURUTA: From what I can tell from the Government's proffer, they have not met their burden under 3142(f) to get a detention hearing. I'm asking for release today.

THE COURT: Okay. Anything further, Mr. Havey, on how she qualifies? She has to qualify under one of the seven

scenarios. Six of them are found in 3142(f)(1). One of them is found in (f)(2). If she doesn't -- if the case doesn't involve one of those scenarios under the statute, if we want to do the hearing now or three days from now, I don't think we can. And there's lots of authority on that, U.S. v. White out of the Middle District of Tennessee, multiple cases in this district and, gosh, Figueroa Alvarez, District of Idaho, 2023, lots of cases.

So anyway, please go ahead. I don't mean to talk over you.

MR. HAVEY: That's okay, Your Honor. I guess I'm just making a nuanced argument about the term "hearing," and I think what (f) is talking about there is a formal detention hearing where you could take evidence and hear from witnesses. Short of that, I don't think there's anything in the statute that prohibits you from considering things like risk of flight and dangerousness if they're present in a situation that doesn't involve one of those subcategories.

So let's say you have a listed scenario there -- or you don't have a crime that fits within that scenario, but say you have somebody who's dangerous. I think Your Honor could hear argument, not necessarily a detention hearing, but still consider that factor. I guess that would be my point. I'm not asking for an evidentiary hearing. I would just argue today while we're here, and I don't think there's anything that

prohibits Your Honor from considering that argument.

THE COURT: Okay. Ms. Tsuruta, what say you?

MR. TSURUTA: The Bail Reform Act does require that the Government meet one of the subsections in order to have a hearing. I think if the Government has concerns, what they might be talking about is what conditions she should be released under. But release is required under the statute unless the Government can meet one of the requirements under (f).

THE COURT: Okay. Mr. Havey, any response to that?

MR. HAVEY: No, nothing further, Judge.

THE COURT: Okay. So here's what we're going to do on the (f)(1)-(f)(2) question. Having examined those sections of the statute many times and the precedent that has discussed them, including some in this district, I really do think that you have to satisfy one of those seven scenarios. In this case, the offense would have to involve, would have to involve a crime of violence, and the Government here has conceded that that's not the case here as I understand it.

It's an adversary system. The defense has said if that doesn't apply and no others apply, and the Government has not advanced any (f)(1) or (f)(2) ground for a detention hearing, I think we find ourselves in a mandatory release situation where the detention hearing cannot be held.

If you read 3142(e), it specifies that you have to

have a detention hearing for the Court to order detention. So the structure is that Congress prescribed -- that Congress limited the types of situations in which detention hearings could be held to those seven scenarios, and the Government, I think admittedly, has represented that it doesn't think any of them apply here.

If I have that wrong in any way, Mr. Havey, I would like you to clarify because that's my read on your presentation today.

MR. HAVEY: No, Judge. I take your point. Fair enough. We can, I think, at the break agree to some terms.

THE COURT: Okay. So it sounds like we now know what are the circumstances under which defendant Robledo will be able to secure pretrial release. The ruling today on the Government's motion is that the motion for detention is going to be denied based on ineligibility for a detention hearing for the reasons stated here in open court. So there's that.

So the circumstances are going to be, defendant Robledo, that you'll be released on a set of conditions, and those conditions will need to be the least restrictive necessary to assure your appearance in court and to assure the safety of the community. Your counsel and the Government counsel are going to work that out, discuss it with pretrial, and then they'll present the set of conditions and we'll go over them. So those are the circumstances under which you may

secure pretrial release.  It looks like it's going to happen today.

The next item is a preliminary hearing.  So we have in this case a complaint.  So there is a right on behalf of both defendants to have something called a preliminary hearing held.  What is that?  It's not a trial on the merits.  It's not a determination of guilt or innocence.  It's a limited-purpose hearing really only to determine is there probable cause or not to support the complaint that has been filed.

At that hearing, the Government can call witnesses.  It can have those witnesses testify to something called hearsay evidence.  Your attorneys, defendants, your attorneys can cross-examine those witnesses and even present defense witnesses if they wish to do that.

A couple more things about preliminary hearings that you should know.  The first is that they can be waived if a defendant wishes to do that, and the second is the right to that hearing can be extinguished if a grand jury indictment is returned in the meantime, because a grand jury indictment is, after all, a finding of probable cause by the grand jury.

So that is the information I'll share with you about preliminary hearings, and I'll just ask defense counsel, Ms. Tsuruta, first.  Is there a preference at this point on scheduling a preliminary hearing?  Is there something else about it?  What do you suggest?

MR. TSURUTA:  We would like to schedule a preliminary hearing.

THE COURT:  Okay.  Mr. Kling, what about you?

MR. KLING:  Judge, we can schedule one, but depending on the circumstances today, that may be removed in terms of waived.

THE COURT:  I'm sorry?  It may be what?

MR. KLING:  We may waive it depending on what happens today, but at this point we can schedule it probably.

THE COURT:  Okay.  So I think we should schedule it. Then if you decide or if your client decides to waive, we will need a -- our practice is to get a letter from you in writing that you file on the docket indicating the waiver, and then it can proceed from there.  The hearing would be vacated, and a finding of probable cause would be entered.

So let's talk about when.  I think we were looking at October 8.  11:00 o'clock is now gone, but is 9:00 o'clock available or are we doing other things then?

THE CLERK:  That's open, Judge.

THE COURT:  I'm sorry?

THE CLERK:  It's open.

THE COURT:  9:00 o'clock is open?

THE CLERK:  Yes.

THE COURT:  Okay.  So we'll schedule this preliminary hearing for 9:00 a.m. on the 8th of October, which is a week

from -- no, it's actually a week from this Wednesday. Does that work for you, Mr. Kling?

MR. KLING: Yes, sir.

THE COURT: Ms. Tsuruta?

MR. TSURUTA: Yes.

THE COURT: Mr. Havey, for the Government?

MR. HAVEY: It does, Judge. Thank you.

THE COURT: Okay. So that's our preliminary hearing date, 9:00 a.m. October 8. So what's to do next? Well, there's a few other things to tell you under the rule. The next item is you have a right to not make a statement; each of you does. If you have already made a statement, it may be used against you.

So, further, you have the ability even if you're -- if you're not a U.S. citizen, if you're not, you can ask the Government or a federal law enforcement official to contact a consulate official from your country of nationality and notify them of the fact that you've been arrested. Even if you don't request such a notification, it might be required by international treaty or other agreement, and you needn't make an oral response to this today. You only get informed of it, as does every defendant who appears in every initial appearance under the rule.

The next item is this. I can tell you that under the rule I am required to confirm for you that the Government, as

the prosecution in the case, it has a continuing obligation to disclose to you all information that's favorable to you and that is material to guilt or punishment. If that doesn't happen for some reason, the possible consequences go all the way up to a possible dismissal of the case and even disciplinary action against members of the prosecution team. So I'm required to tell you that.

I think we might be concluded except we -- well, let's see. Did we set the detention hearing for Mr. Collins yet? I'm not sure we did.

MR. KLING: We did not yet, Judge. I'd like to have it instanter if we can.

THE COURT: Would you like to do it now?

MR. KLING: Yes, sir.

THE COURT: How about you, Mr. Havey?

MR. HAVEY: Yes, Judge.

THE COURT: We'll do it immediately, as the statute directs, absent a motion. So we're going to do that detention hearing now.

Ms. Tsuruta, I'm not sure your client needs to be here for that, but as a member -- she's not yet released. Would you have a preference?

(Discussion off the record.)

MR. TSURUTA: She would like to stay, Judge.

THE COURT: Okay. Any issue with that, Mr. Havey?

MR. HAVEY: No, Judge.

THE COURT: Okay. So what I think we'll do next is we'll do a detention hearing as to Mr. Collins. So why don't you tell me, Mr. Havey. You've got two prongs in that statute, and if you meet your burden as to even one of them, the statute requires me to order detention. The first one is: Is there no conditions or are there no set of conditions that would reasonably assure the appearance of defendant in court? Your burden there is by a preponderance of the evidence. The other proposition is that there's no release condition or set of conditions that will reasonably assure the safety of the community. Your burden on that one is clear and convincing evidence.

So, Mr. Collins, he may not move on both. He may not prevail on both. If he prevails even on only one, the statute requires detention. But it's a detention hearing, so you get to be heard through your counsel. You get to oppose that. If they don't meet their burden on either, I have to order your release under a set of conditions. So that's what we're doing.

My thought is since they've got the burden, the Government goes first, and then, Mr. Kling, you can respond. Then Mr. Havey can rebut if he needs to. We can proceed by something called proffer, where witnesses are not called but each attorney proffers what they believe the evidence to be.

Any objection, Mr. Havey?

MR. HAVEY: No objection. I would just add that the case agent is here, and he knows everything I know. So in the event that my proffer needs to be verified, he's able to do that.

THE COURT: I'm leaving it up to you if you want to put anybody on. I don't -- it's not a decision for me.

MR. HAVEY: It's not necessary, Judge.

THE COURT: Okay. Mr. Kling?

MR. KLING: I'm assuming you want input from the pretrial officer as well, but with that input we're ready to proceed.

THE COURT: Yes, I think we're going to. We usually have a pretrial services report that's done, and I might decide, Ms. Lesch, that I need one before I can even render a decision today. I don't know, but at the parties' request we're going to go ahead and do it today and we'll will see where that lands us.

So go ahead, please, Mr. Havey.

MR. HAVEY: Yes, Judge. First of all, we're not moving for detention on the basis of risk of flight. It's just based on the second prong, which is dangerousness to the community. That is based primarily on the fact that the defendant brought a loaded pistol to a volatile situation, which was, as you're aware, Your Honor, a protest outside of a federal law enforcement facility in Broadview, Illinois, on

Saturday night.

So this wasn't a scenario where, you know, you see people outside of Dirksen getting a permit and peacefully protesting. That happens all the time. What we see now with these ongoing ICE operations are some very disturbing and aggressive protests, and the defendant obviously knew that when he went to this protest.

THE COURT: Let me interrupt you for just a moment. I have an emergency to respond to that concerns my duty responsibilities.

MR. HAVEY: Sure.

THE COURT: So I just need to pause the hearing for a moment.

MR. HAVEY: Okay.

THE COURT: We'll be right back. Thank you. We'll pause briefly.

(Pause.)

THE COURT: These are judicial responsibilities to make sure that all rights are observed on multiple matters.

So what we were doing, I interrupted you, Mr. Havey. You were describing the conduct here, which you described as bringing a loaded pistol or a loaded handgun to a protest outside the Broadview facility, and then I kind of interrupted you. Please continue, and I apologize.

MR. HAVEY: That's okay, Judge. Just to be upfront,

the pistol was not brandished by the defendant. It was concealed in the waistband, and it was not discovered until after he was arrested and the agent searched his person. That all was caught on videotape, and so I've seen the video of them taking the pistol and clearing the pistol.

So my point is, Your Honor, the defendant brings a loaded pistol to what's likely going to turn out to be an angry crowd, as we've seen in prior incidents involving these types of protests. It's at night, it's at a federal law enforcement facility, and it just has all the opportunity there for something to go sideways.

When somebody brings a gun, you know, I was trying to think of a scenario where he would think he would need a gun because he's going to a protest against law enforcement. So to me it's very disturbing because if he's bringing in a gun, that means he thinks he might need it. You don't bring a gun unless you're capable of using it. Why? Again, I'm trying to think of a scenario where he would need a loaded pistol, and I can't think of a good reason for doing that.

THE COURT: Was there any type of permit covering this pistol?

MR. HAVEY: Yes.

THE COURT: Tell us about that.

MR. HAVEY: As it says in the criminal complaint, the defendant was lawfully able to carry a pistol and carry it

concealed. But again, Your Honor, he's bringing a gun, a loaded gun into a very volatile situation in which there's a large crowd. There's agents directing people to move back. Many of them are complying, as it says in the complaint. The defendant does not. He charged into a group of agents which, again, shows a level of aggression and violence.

At that time, he's in possession of a loaded pistol, and, again, that can go in all sorts of different directions. So there's a kind of recklessness there that reflects on, you know, whether he has concerns for others' safety. These ICE operations are going to continue. There's going to be more protests, and you just know every day. There's this fence around the building with padlocks, so everybody is taking this very seriously.

These are potentially explosive situations, and if people start bringing firearms or they think they can bring firearms, I think that's a reflection on his dangerousness and the need to protect the public in addition to protecting the safety of the agents who he's fighting with. As a result of the interaction he had, as I said, Judge, one of the agents was physically injured. He resisted arrest, and it wasn't until after he was arrested, as I said, that they found this pistol on his person.

So for all those reasons, Your Honor, we think this goes beyond a case of a mere shoving like the co-defendant.

Although she also was armed, she didn't physically assault an agent to the extent that her husband did, and because of that, that's why she doesn't fit within the four corners of that statute that we just talked about, Your Honor.

But, nonetheless, we think that this was a very dangerous situation. It could have been a lot worse, and it wasn't because of the defendant that it didn't get a lot worse. It was because the agents handled it as best they could, and fortunately only one agent walked away with an injury and it wasn't a life-threatening injury.

So for those reasons, Your Honor, we think that defendant should be detained pending trial.

THE COURT: All right. Mr. Kling, please respond.

MR. KLING: Let me give you a little background. First of all, at the time that he approached the agents, his fiancee was being taken into custody. According to him, her face was put up against a wall, and so he went to try to help his fiancee who was in federal custody.

In terms of the gun argument, Judge, it may have been foolish for him to have that gun at the demonstration, but he regularly carries it. Unfortunately or fortunately for you and me and the Government, we don't live in neighborhoods where when we walk out of the house in the morning we feel the need to carry a gun. He does. He lives in Englewood. He has a FOID card. He has a conceal and carry card. He carried it for

his own protection.

THE COURT:  Was he in Englewood at the time?

MR. KLING:  No, but he carries it.  He puts it in his possession when he gets out of the -- when he walks out of the house.  That's just routine, Judge.  Like you carry your keys, he carries a gun.  It's unbelievable that in some neighborhoods people feel they have to do that, but he does.  Based on his lack of background, he hasn't used a gun.  He didn't brandish the gun.

THE COURT:  What I'm pressing you about is this.  Isn't there a difference between carrying a gun for self-defense and protection in a dangerous neighborhood or a neighborhood perceived as dangerous?  Isn't there a difference between that and going to a federal law enforcement facility where there are active protests, some of which in different parts of the country have resulted in some violent confrontations, and then engaging with agents?

I appreciate that her face was pressed up against a wall of some kind.  The proffer in the complaint was that he charged the agents, charged at them, and then this physical confrontation ensued while he was in possession of this firearm.  Isn't there a difference between that scenario and being in the neighborhood, so that somebody might decide on this day he'll leave his weapon at home in the lockbox and won't bring it to Broadview to the ICE protest, or am I all wet

24

about that?

MR. KLING: Judge, the most he's guilty of is thoughtlessness. I agree with you that maybe he should have thought not to bring the gun to the protest, but when I walk out of my house, I put my car keys in my pocket and they don't come out of my pocket until I come home at night and change my clothes.

When he walks out of the house, he carries a gun. He has his FOID card. He has a CCL. He carries it for protection, and he doesn't think about it. As I said, maybe it was thoughtlessness to go to the demonstration without saying: I'm going to leave my gun at home.

But he certainly never brought the gun with the intent of using it, and the evidence shows he never threatened the officers. He, in fact, told them he had a gun. He never brandished the gun. He never attempted to use the gun, and he was cooperative once he was taken into custody.

This is not a case where he should be detained, Judge, under any circumstances. I don't know whether you or I -- if my wife was at a demonstration being taken into custody and thrown against a wall, I think a natural reaction is to try to help her. He didn't charge the agents. He ran towards where the agents were holding his wife, and "charge" I think has a connotation that he was trying to do something to the agents. He wasn't trying to do something to the agents. He was trying

to see if his wife could be released.

For all those reasons, Judge, because of his lack of background and because of the circumstances where he lives, because he told them about the gun, because he never attempted to use the gun, because he didn't brandish the gun, it was in no way in connection with the incident, and I think it should be disregarded insofar as the dangerousness to the community.

THE COURT: Okay. I appreciate your argument.

Do you want to add anything, Mr. Havey?

MR. HAVEY: No. Thank you, Your Honor.

THE COURT: Okay. Ms. Lesch, we'll have a brief recess.

MS. LESCH: Yes, Your Honor.

THE COURT: Can you accompany me? Pretrial services reports, recommendations, advice to the Court is, in fact, confidential. So a brief recess while we do that, and we'll come right back.

MR. KLING: Thank you.

(Recess at 12:50 to 1:03 p.m.)

THE COURT: Yes, Mr. Kling?

MR. KLING: May I add one thing in terms of the issue of dangerousness of Mr. Collins?

THE COURT: Yes, and we'll give Mr. Havey a chance to respond. What is it?

MR. KLING: Judge, number 1, the gun is in possession

of the authorities, so there's certainly no danger with the gun anymore. Number 2, he can surrender his FOID and his CCL, and he has no passport.

THE COURT: Okay. The passport I think is not really relevant to the dangerousness issue.

Mr. Havey, any response to that?

MR. HAVEY: Well, it's a fair point that that gun is now in the possession of the Government, but there's nothing that prevents him from getting another gun. I know you can write that into an order, but guns are very easily obtainable in today's day and age, especially for somebody who knows how to handle and use a gun. So I don't --

THE COURT: But in his case, he had a permit for the one that he carried. Do we have any reason to think he would obtain like a weapon that he wouldn't be permitted to carry or would be unlawful somehow?

MR. HAVEY: Yes, because as Mr. Kling argued, he lives in a violent neighborhood which requires him to carry a gun. That's the argument. I'm not challenging that it's very dangerous there, but I think one places priority above all to preserving one's life. So I think that has a higher priority in his mind than complying with an Illinois state gun possession law or even, you know, an order of Your Honor.

THE COURT: Okay. All right. Here's the ruling. So the pretrial services recommendation to the Court is for

release on conditions and for release on conditions that would not even include a third party custodian, and that's based on a number of factors that were not presented in court today. Because they were not presented in court today, I'm not going to rely on them, and that leaves the field wide open for the defense to seek to reopen the detention issue to raise issues not previously known to them under the statute. My ruling is also subject to a 3145 motion to the emergency district judge that it be overruled.

Mr. Kling, I think it's kind of a close call that I agonized over, and the question is did Mr. Havey and the Government really prevail by clear and convincing evidence that no conditions of release would reasonably assure the safety of the community.

What I struggled with was the judgment involved in bringing a loaded firearm to a public protest, a public protest in this particular time and space which involves a lot of public tension and resistance to what ICE is doing generally and to what they're doing here in the city, and a tendency on the part of ICE at least through public reporting to be very aggressive in enforcing the law, to be very aggressive in managing protests at the facility.

It's not a surprise that there was a physical confrontation. I don't think that would have surprised anyone who goes to one of these protests. So to bring a loaded

firearm to that protest, I'm having a lot of trouble answering the question of who brings a loaded firearm to an ICE protest. I'm having a lot of trouble with the judgment there and what that says about community danger, what that says about whether release conditions would adequately protect the community, would reasonably assure the community's safety.

I've also thought a lot about not just the bringing of the gun to the protest, but of what relevance is the lack of evidence of intent to use it. That's a good point that Mr. Kling made. Well, I'm not sure that the lack of evidence of an affirmative intent to use the firearm or that it was ever brandished or removed from its holster or waistband or wherever it was by Mr. Collins necessarily carries the day or defeats the Government in meeting its burden, because when you bring a loaded firearm to an event like this and there's a physical confrontation that by the Government's proffer -- and defendant is innocent till proven guilty -- but by the Government's proffer involved a physical confrontation with agents, there's a disagreement about whether he charged at them, ran at them. But even looking at that most charitably, there's a physical confrontation.

So engaging in a physical confrontation and scuffle with agents while carrying a loaded firearm injects a great amount of danger not just to the people right there, but to the whole group of individuals at that protest, because we don't

know what might have happened. It created a possibility that that gun might have been seen by the agents, that they might have drawn their weapons and injected their weapons into the situation, that the gun might have somehow come out, that it might have gone off, that other people could have been hurt.

Who brings a loaded firearm to an ICE protest? Whether it's needed for self-defense in Englewood, I'm not weighing in on that. It might well be needed for self-defense in Englewood any more or less than it might be needed for self-defense in Lincoln Park. We have a Second Amendment that entitles people to keep and bear arms. We have state laws that entitle them to obtain concealed carry permits.

But for the purposes of 3142(e) and whether there's reasonable -- a set of conditions that will reasonably assure us, I've got somebody who brought a loaded firearm, permitted or not, to a protest, and I'm having a lot of trouble with that. So that's why that took so long. I had a discussion with pretrial, a discussion with my staff, and I do think that different judges could look at this differently.

MR. KLING: May I respond, Judge?

THE COURT: Yes, in a 3145 because I've decided that I am going to grant the detention motion for the reasons stated on the record and I'm going to enter a detention order. I can think of only one other instance where it's been this close. It was a very close call for me, and I think there's a very

colorable argument in the other direction which I thought you made very effectively, Mr. Kling.

You know, those of us judges, we may not always be right. Sometimes other judges disagree with us. That's why they call our orders opinions.

MR. KLING: May I say --

THE COURT: But that's my ruling.

MR. KLING: May I say something, Judge?

THE COURT: I'm going to give you the floor. Go ahead.

MR. KLING: Judge, he might have been a danger at the protest, but the question is whether he's a danger to the community if he's released now. The answer is he doesn't have the gun. He can turn in his permits. The protest is over. He never brandished it. He didn't go there with the intent of using it. He never attempted to use it.

The bottom line is the question is not whether -- he was stupid to take the gun to the demonstration. I don't disagree with you on that, but the question is, you know, is he a danger to the community now, and I think right now he's not a danger to the community and should be released.

THE COURT: It's a good point. The protests, I think, are not over. I think they will continue. As far as, again, ICE is concerned, it's a very aggressive law enforcement agency. So to engage that particular agency in this kind of

battle with a loaded firearm shows such horrible judgment that I don't think a set of conditions will reasonably assure us. So that's where I'm at, but I recognize there's lots of room for disagreement and lots of judicial or statutory avenues to raise those disagreements at levels above me. So that will be the ruling. The detention motion is granted.

We've got to move on to the next case. I don't know that we have anything else on Ms. Robledo at this point. She needs to be released. There needs to be a release order. We need to proceed with another hearing set for 1:00 o'clock. I'd like you to confer with counsel, and I'd like you to notify my deputy when the proposed set of conditions is ready, or is it?

MR. TSURUTA: We have a proposed set of conditions right now.

THE COURT: Okay. Can you present it?

(Pause.)

THE COURT: The order is Mr. Collins will be remanded to the marshals pending further order of court.

So, Ms. Robledo -- well, Ms. Tsuruta, do you mind if I go through these conditions with her, so read one at a time and in groups, and she tells me if -- she tells me yes if she agrees and understands them? Are you okay with that?

MR. TSURUTA: Yes.

THE COURT: Okay. So you've got to commit no federal, state, or local crime while on your release, Ms. Robledo, and

you must cooperate in the collection of a DNA sample if it's required by federal statute.  Understood and agreed?

DEFENDANT ROBLEDO:  Yes.

THE COURT:  Speak loudly and into the mike.

DEFENDANT ROBLEDO:  Yes.

THE COURT:  Okay.  You have to advise the Court or the pretrial services office or supervising officer in writing before you make any change of residence or telephone number. You have to appear in court as required.  If you're convicted, you must surrender as directed to serve a sentence that the court may impose.  Understood and agreed?

DEFENDANT ROBLEDO:  Yes, agreed.

THE COURT:  You have to sign an appearance bond, which we'll explain in a minute, and you have to submit to supervision by and report for supervision to the Pretrial Services Department.  Understood and agreed?

DEFENDANT ROBLEDO:  Yes.

THE COURT:  You'll have to surrender any passport to pretrial services within two business days.  Understood and agreed?

DEFENDANT ROBLEDO:  Yes.

THE COURT:  You have to not obtain another passport or international travel document, and you will have to abide by a restriction on your personal association, residence, or travel restricted to the Northern District of Illinois.  Understood

and agreed?

DEFENDANT ROBLEDO:  Yes.

THE COURT:  Ms. Tsuruta, can you get her a map of the Northern District so she knows?

MR. TSURUTA:  Yes.

THE COURT:  Okay.  Further, you have to get medical or psychiatric treatment in the form of continuing your mental health counseling.  Understood and agreed?

DEFENDANT ROBLEDO:  Yes.

THE COURT:  You cannot possess a firearm, destructive device, or other weapon as a condition of your bond.  Do you understand and agree with that one?

DEFENDANT ROBLEDO:  Yes.

THE COURT:  You have to report, meaning to tell pretrial services as soon as possible if you have any law enforcement contact with any law enforcement agency or member, and that's going to include arrests but also mere questioning and also even traffic stops, and report it as soon as possible. Do you understand and agree with that?

DEFENDANT ROBLEDO:  Yes.

THE COURT:  All right.  The final condition here is that you have to surrender all firearms and ammunition that you have in compliance with Illinois state law within two business days.  All those weapons, now that the Court has made an agreement with you to release you, have to be surrendered to

the authorities lawfully.  Understood and agreed, ma'am?

DEFENDANT ROBLEDO:  I'm sorry?

MS. TSURUTA:  The requirement is that she comply with the Illinois state law, which doesn't necessarily require the transfer to authorities, but an authorized person can accept those firearms as well.

THE COURT:  Okay.  It's a surrender.

MS. TSURUTA:  Yes.

THE COURT:  So by "authorities," I was speaking of authorities really large.

MR. TSURUTA:  Yes.

DEFENDANT ROBLEDO:  Yes, understood with the further clarification.

THE COURT:  All right.  It certainly means, Ms. Robledo, you can't be bringing any firearms to any protests while you're on release.  Do you understand that?

DEFENDANT ROBLEDO:  Yes, yes.

THE COURT:  Okay.

MR. TSURUTA:  And, Judge, another requirement that pretrial brought to my attention, she needs to surrender her FOID card.

THE COURT:  I can't quite hear you.

MR. TSURUTA:  She needs to surrender her FOID card --

THE COURT:  Okay.

MR. TSURUTA:  -- and concealed carry card.

THE COURT: So here's what I'm going to do. I'm going to write in condition T "FOID card, CCL permit, and all firearms." Then you're going to look at it again. Actually, she's not signed it yet, so she'll look at that and sign it. Okay?

(Pause.)

THE COURT: Okay. Further conditions. The bond, what is it? An agreement, an agreement between you and the Court that you're going to appear in court and are going to abide by all these release conditions, and if you're convicted and sentenced, you'd surrender to serve any sentence the court may impose. Understood and agreed, ma'am?

DEFENDANT ROBLEDO: Yes, ma'am.

THE COURT: Face amount is $4500 unsecured, meaning money not put up, but it means if you violate the conditions and the bond is forfeited, the Government could come after you for $4500. Do you understand that, ma'am?

DEFENDANT ROBLEDO: Yes.

THE COURT: Okay. Consequences of violations, let's talk about those. A violation of these conditions could result in the lodging of further criminal charges or a contempt of court, and those could carry a separate and independent criminal penalty, including possible incarceration and possible fine over and above whatever gets imposed, if it does, in the 111 case. Understood and agreed?

DEFENDANT ROBLEDO: Yes.

THE COURT: Other consequences could include any of a couple of things, including the court revoking the release order and then entering a detention order ordering that you be held, that you be held behind the wall pending adjudication of your case. If these conditions are violated, those are potential consequences. Understood and agreed, ma'am?

DEFENDANT ROBLEDO: Yes.

THE COURT: All right. So just so you know, pretrial services enforces these things by not really enforcing but monitoring and supervising you, and they're very good at becoming aware of violations. When they do, they notify the court, and there's a bond violation report. The court looks at it and figures out: What do we do about this? Do we do a hearing? Do we bring you in? At that hearing, what further might we have to do about it, because the consequences do include possible detention or revocation. So it would mean we would see you again other than at any preliminary hearing when I expect we will see you again.

Am I going to see you again on a bond violation?

DEFENDANT ROBLEDO: No.

THE COURT: Audibly, okay. Then I think we might be done with the conditions. I'll sign these conditions, and you'll be released, Ms. Robledo.

Anything else, Mr. Kling? I appreciate your

objections to what's happened here today.

MR. KLING:  Is the Government moving for exclusion of time, Judge?

THE COURT:  Usually I see that at an arraignment, but I don't know.  Mr. Havey, what are you doing?

MR. HAVEY:  Your Honor, we would seek an exclusion of time in the interest of justice.  There hasn't even been any sort of discovery production yet.  This just came up today.  We've got our next court appearance today, and I think --

THE COURT:  Any objection?

MR. KLING:  Yes.

THE COURT:  What's the objection?

MR. KLING:  We object to the exclusion of time.

THE COURT:  Okay.  That's taken under advisement.  I will review whether such a motion is even necessary and whether the Court would grant the exclusion or not.  Maybe we'll get you an order by the end of the day.

Anything else either of you wants to add on that?

MR. HAVEY:  No, Your Honor.

THE COURT:  Okay.  Mr. Kling?

MR. KLING:  No, sir.

THE COURT:  Okay.  I think now we might be done, but anything else, counsel?

MR. TSURUTA:  No.

THE COURT:  One moment.  Ms. Knight, are we good?

DEFENDANT ROBLEDO: Yes.

THE COURT: Okay. We're adjourned. Thank you, everyone.

MR. HAVEY: Thank you, Judge.

(Pause.)

THE COURT: Okay. On the record, Mr. Kling, please proceed.

MR. KLING: Given the nature and we have a hearing on October 8th, I would ask that you recommend to the marshals -- and I know it's their decision -- to keep Mr. Collins at the MCC rather than having him go out to one of the regional facilities.

THE COURT: I can make the request or recommendation, but I really don't have any control over it. I honestly don't think that the Marshal's Service, usually anyway, is able to put a lot of attention to that kind of request because of all the demands on them. But as a courtesy to you, I will.

MR. KLING: Thank you.

THE COURT: Okay. We'll now go off the record in that matter.

MR. HAVEY: Thank you.

THE COURT: Okay, off the record in the Collins matter.

(Proceedings concluded at 1:28 p.m.)

C E R T I F I C A T E

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

*/s/Patrick J. Mullen*          *October 2, 2025*

Patrick J. Mullen
Retired Official Court Reporter